Case number 20-1529 Martin J. Walsh v. Timberline South LLC et al. Oral argument not to exceed 15 minutes per side. Mr. Thoyer for the appellants. Good afternoon. Good afternoon, your honors. May it please the court, Jeff Thoyer on behalf of the appellants defendants in the case. I'd like to reserve three minutes for rebuttal if I may. Yes. This case is before the court on the grant of the secretary's motion for summary judgment after remand for the second time. It's a grant of the same judgment in the exact same amount as previously vacated by this court. The prior appeal in the prior appeal, this court resolved various issues of exemptions and other issues of law relating to liability and remanded to the district court because the secretary's damage calculations included hours prohibited by the Portal to Portal Act and the Fair Labor Standards Act for travel to work, travel from work and bonafide meals hours. The secretary and the court below assert that the original judgment amount should stand because the exact amount of travel and meal time included in the secretary's calculations. The defendants respectfully assert that that's not the proper standard on the record of this case. Again, this is a motion not after a trial or an evidentiary hearing of any kind. In fact, there's never been an evidentiary hearing on any issue in this case. The judgment here, and in fact, just going back to what the record is, the judgment was entered without an evidentiary hearing, without even argument of counsel. The secretary and the court below make a great deal of the fact that there were three rounds of briefing on damages in this case. However, that ignores the fact that those three rounds were made necessary because of multiple demonstrable errors in the secretary's calculations. Counselor, you keep talking about no evidentiary hearing, but I'm sure you're anticipating our response to that line of argument that you have fact-finding and evidentiary hearings when the parties create material fact disputes. And, you know, there's a lot of different ways to construe Mal Clements, and that is not the question. My first question is, isn't it on you to, I mean, you were able to produce these affidavits from these five employees that I think showed roughly two hours of commute time each day and one half hour of mealtime, so that looks like a material number. I suspect someone, including the Department of Labor, might say, huh, I bet they picked the best ones. In other words, the people with the longest commute times. Who knows? But I guess my question for you is, maybe you're right. Maybe the damages calculation is wrong as to those five, but there were 50 employees. It's not like there were a thousand. And, you know, you're allowed to make arguments that say we win as a matter of law and everything, and here's how the act works, but usually expected at backup arguments, which shows what, you know, would show what happens, you know, that the damages aren't as much as, say, the Department of Labor thinks. You know, why wasn't it on you to put in this stuff? I'm sorry, your honor. Go ahead. As an initial matter, under the Anderson standard, the burden of proof is on the plaintiff, on the department in this case, to initially show that employees worked more than 40 hours. So there is that initial burden, and it's not on the defendants. It's on the plaintiffs. Now, we know from this court's prior decision and from the CFRs, being 29 CFR 785, 34, and 35. So counsel, you only got 10 minutes. You're going to have to go right to my question I asked, not the one I said I was not asking. I was not asking about Matt Clements versus Anderson. I said that at the outset. I asked, you have five wonderful affidavits. Why just five? Because that's all we could get. We're talking, we're not talking about an evidentiary hearing. I mean, get within the time frame of the briefing schedule that we were provided with. This is not a case where we had an evidentiary hearing, put everybody into a truck and bring them down to testify in front of the judge. You have the records. We have the records. What we have, Judge, we have more than the five. You have the names, their normal hourly rates, you have their email addresses, you have their phone numbers. How hard is it to say how long was your commute time and how long were your meal times, and were you getting paid for that each time? Well, just to respond to the question directly, we have, in addition to the five, which, by the way, we're not accounted for in the Secretary's calculation. I'm agreeing with you as to the five. Yes, and we also have the affidavit and deposition testimony of Jim Payne, the owner, who testified that all the employees filled out their time records this way. That can't possibly be right because there's seven affidavits that go the other way that say they did not include. Yes. So you got to get right to the point. Give us the benefit of the doubt on these questions. Yeah, well, the other point to raise, Your Honor, is that the Department of Labor's investigator did not make any effort to account for any of this travel to work time, even though he knew it was available. In his deposition, he admitted that he was aware there was travel to work time included in the hours that were included in the time cards, and yet he included it in his overall calculations anyway. Counsel, you have all the records, right? So we have the time records. Yes, we do. Why is it so hard to give the judge more of the same information? And why do you need discovery? Why can't you just say, look, this is what we have. The Court of Appeals said that this commute time and bona fide meals aren't included. You need to take this much of off, and here are the records to support it. Your Honor, the records that we have are total compensation hours. They are not broken out any other way. With respect to how much time was spent on these things, we did provide during the motion procedure a set of an expert report of sorts that identified each employee by name and hours and took out what we believe to be the appropriate amount of travel to work time and meal time. So, okay, but if you have, I know you said it's total compensation, but if you have the employees and the hours that they're scheduled to work, isn't that a pretty simple mathematical calculation where you deduct that and then you have some figure? So it seems to me that that is calculable without a, you know, some kind of complex formula. It is, and it was submitted to the Court with our motion for summary judgment. It's in the record at document number 19, as Exhibit 8 to document number 19. And what was deducted for that? I'm sorry? What was deducted in that exhibit? In that, well, that one was early. Remember, this is early. So, Counsel, I'm going to help you out here because you got to help us. You got to help us out, but I'm going to try to help you out by really focusing you on what all three of us want to know. You're allowed to say the District Court was unfair to you by not letting you open up discovery, all right? You're allowed to make that argument, but you have to show you were prejudiced. And the way you show you're prejudiced is you say, look, we have these five affidavits. They're representative of all 50 people. Therefore, the damages should have been dropped by $100,000. You have to tell us something like that. Now, what can you say beyond the five? Beyond the five, Your Honor, are the names in the report that I just referenced, which bring the total amount down. I believe the amount was $11,000, but that would have to be the drivers were exempt under the Motor Carrier Act or not. So, they were deemed, they were just taken out of the equation in that report because that was still an issue. Yeah, but I don't, I'm not sure I understand why that matters. You get a remand. You ask for discovery. The judge says no. It's your duty to say, here's how we're prejudiced. Here's the extent of the prejudice. Tell us what that is. We're prejudiced because we believe in our estimation of where we know these employees to live and where they work. They work an average, they spend an hour each day going to, and then an hour coming back from work. And those hours should be deducted from the total compensation that the secretary included in their calculation. Why do you, so the argument you're making is premised only in the five affidavits. Why are you insisting on ignoring the seven affidavits that said we did not, you know, we never included commute or meal time? Judge, again, we get back to the idea of this is a motion for summary judgment. We are creating an issue of material fact, and clearly there is one here. Those other employees, we're talking about people who worked at the company two, three months in most occasions, they're not credible. We would like to cross-examine them if we can, because we don't believe that they're credible to begin with. Speaking of credibility, are you saying that the 50 employees all had lived an hour away from the facility? They lived an hour away from the Okay, fine. But you're saying everyone commutes two hours a day? On an average, yes, Your Honor. They're supposed to keep track of that. Very few of them do. So it is likely that you have to resort to some kind of an estimation in this case, just as the plaintiffs did to come up with their original calculations. But based on what we know about they live, it was an hour each way to the sites. These aren't a whole bunch of sites. These are generally large tree forests kind of things. We know where they are. They're there for large periods of time. So those amounts can be calculated. What discovery would you have conducted, and why did you need to get it from a third party? Well, Your Honor, what we would have done is some of these employees don't live, don't work for the company anymore. So we would have sought them out because we frankly did not have time. We could get discovery from the employees, certainly. But, you know, again, this is a matter of just figuring out individually which employees drove. But why? I'm struggling with why you need their help. You know, where the job sites were, you know where they live. That's kind of a Malcolm's point. You have access to the information. Just submit it. And we did submit it. That's the expert report that was submitted with our motion for summary judgment. No, but why didn't you get more than the five affidavits? In other words, something that shows there's only 50 people. This isn't a thousand. There's only 50 people. Just say these people live here. This is where they normally worked. Commute time, an hour, two hours, whatever. Yeah, we got the ones we could get, Your Honor. Again, we were imposed. We had time limits imposed on us for briefing when this issue came up. And again, we were briefing a lot more than just the damages issue. I'm sorry. Go ahead. Did you tell the judge these are five affidavits? We have 20, 30 more that it'll take us a little time to get, but we want the time to get them. Your Honor, when we submitted the expert report, we argued that all of these employees, and that's consistent with the affidavit of Mr. Payne, the owner, that all the employees recorded their time in this way. They all spent approximately two hours a day travel to work and from. So if that was the argument, I guess inherent in that is sort of a concession that this is representative, and it doesn't sound like a request for an enlargement of time to conduct discovery. And that would sort of harm your prejudice argument, because it seems like your theory at that point was these are representative, all of the employees reported their time this way, even though there are seven over there who did it differently. But you're not asking for an enlargement of time. You are saying these five sort of demonstrate what the practice is, and that's enough for you. And then it seems like only after the judge did not rule in your favor, it becomes problematic. Well, it's problematic in the sense, Your Honor, that we believe that the five affidavits are representative in conjunction with all the other evidence. But if the court wants specific information, as it appears to in its decision for each separate employee, then we would need to take depositions or get affidavits from every single employee. We don't think that's necessary. We think the five affidavits are sufficient with all the other evidence to show an approximation. But if that's not what the court wants, then we do need discovery in order to provide that. So Rule 56, doesn't Rule 56 have a provision that says you can tell the court that they shouldn't act on a summary judgment motion until you're given more time? Did you file that motion? We didn't file a motion like that. Doesn't that mean this is forfeited? In other words, tell me what I'm missing here. I could be wrong about my understanding of this, but I thought the way this worked is that if motions for summary judgment were filed, and one of the parties thought, well, wait, this is premature. We can't show material disputes of fact until we get this additional discovery. Judge, you can't rule on the motion just yet. You've got to postpone until we get the discovery. I thought that was the mechanism for preserving this type of argument. Am I missing something? Judge, we believe that a material issue of fact has been shown. We have five affidavits that are unrebutted as to at least the five employees. Okay. Okay. No, no, no. Okay. Again, all of my questioning is premised on this assumption. You are right about the five, but you have, it's the 45 that you have a problem with. And I'm telling you that was the point of the Rule 56. I don't know if it's D, whatever the motion is, that if someone files a summary judgment motion against you, it's incumbent on the non-movement to say, listen, how can I show whether there's a material dispute of fact without access to this information? Do you know what I'm talking about? I'm looking at the Rule right now. And the Rule is premised on the idea that the non-movement cannot present facts to justify its opposition to the motion. Our position is that we have done that. Our position is that if the judge believed, the district court judge believed that we had not done it, then he needed to give us discovery so that we could get the information that the judge wanted from those other employees, some of whom don't work for us anymore. And we would have to root them out. What were the remaining issues of fact? I'm sorry, I'm not following the question. Well, you said that summary judgment was inappropriate. What were the remaining issues of fact? Oh, Your Honor, the remaining issues of fact would be, well, there could potentially be a number of them depending on what the district court judge is interested in. But whether what time period when the day begins, for example, in the workday can be an issue of fact in these types of cases. When you start the clock on the travel to work time, those types of things. Again, we believe we have started the clock at the right time. We have submitted that information and all of the affidavits we could get along with a report and some deposition testimony. But there are other issues that could be brought up. If I guess I at the discretion really of the secretary, if they wanted to contest when the clock should start on the actual workday. Your affidavits are a little a little fuzzy on the meals. How much do you claim you should be able to deduct for the meals? We've deducted a half an hour for meals each day, Your Honor. Why don't we hear from the Department of Labor and then you'll get your full rebuttal. Thank you. All right. Good afternoon. Good afternoon. Thank you, Your Honor. Do I go ahead and start? Okay. Yes. If I could just maybe start where Judge White left off. There's absolutely no evidence that any of the 50 employees took a full 30 minute bonafide lunch period on any of the days on just to help me out. I thought those five affidavits estimated a half hour of mealtime. Am I wrong in remembering that? Your Honor, what they said is they took a 30 minute lunch break when they could fit it in, when they could fit it in. And we don't know if that was five days a week or if that was once a month. There may have been a day when they weren't in the forest. This strikes me as a perilous line argument. The more ambiguous it is how long each lunch break was, the more head scratching it is that the district court didn't allow for discovery or at least more time for more affidavits. So that strikes me as a funny way to push this. I'll just tell you the thing I have for you that I was no evidence to support the two hour commute time, the mealtime. Why in the world did the judge make the legal ruling? Why did he even need to do that if he didn't have the evidence? So it's very strange that he didn't rely on the absence of evidence the first time, gets reversed and suddenly says, well, we didn't need to do that because there wasn't any evidence anyway. And so I don't know, that does seem a little unfair, particularly when you have five affidavits, you know, directly on point, supporting their position at a minimum as to the five and arguably providing evidence for the 50. Yes, your honor, but just to clarify the record, there was plenty of time for discovery in this case. They had at least 18 months because these summary judgment motions, discovery had concluded already in 2017. That's when these five affidavits were filed and the other seven affidavits, the depositions were taken and all the rest of it. So it's been four years. They had plenty of time at any point during this period to ask the judge, may I please reopen discovery? Because if I were to reopen discovery, you know, there's some gold mine of evidence out there. The problem is, and this is what the judge recognized, they had plenty of time to conduct discovery. They have plenty of time to submit any back pay computations or to challenge the back pay computations. Let's just say, you know, overtime disputes have lots of different components to them in terms of the relevant discovery. The one thing we know for sure is after our first decision, the discovery had gotten focused on commute and mealtimes. Why wouldn't you just say, I'll give you a month to put together your affidavits? And we, you know, I still think this could have been resolved in summary judgment. I don't think it had to be something else, but I don't understand why the judge wouldn't say, go ahead, get me the affidavits and we'll go from there. Your Honor, I think the reason is what he said. He said that these affidavits are inadequate and they are insufficient and you've already had four years. You've had plenty of time to put it together. In fact, you haven't done it. And the other thing I just want to say is- You know, counsel, I would feel better about that if in reading the district court decision, I didn't have the reaction that the court was a little frustrated with our decision. It seemed like the court spent a lot of time re-arguing its position about customs and traditions and its view of the Portal to Portal Act without paying attention to the FLSA itself. That tends to give an appellate judge pause. Yes, Your Honor, I understand that. I think the other thing that I just want to say, I just want to get this in. Mr. Thorne mentioned several times that there was some kind of expert report. That's just simply not true. There was no expert report in this case. In fact, Timberline never submitted back pay computations. So counsel, I really appreciate your list of things you want to say and your argument. Would it not be nice to respond to the questions of the judges? I'm sorry, Your Honor. Let me back up. I'm making the point, the judge seemed like he didn't think he should have been reversed, and I'm going to re-enter judgment. Is that not something that an appellate court should pay attention to? And how am I misreading what happened? Well, I think it's very clear that the judge attempted to establish, he attempted to follow the court's remand order of establishing any ordinary commute time. He said it was impossible to establish any ordinary commute time based on the evidence in front of him. He felt that Timberline had not established a genuine issue of material fact, because even if you presented these five affidavits to a jury, the jury, as Judge Donald quite rightly pointed out, the jury would not be able to calculate how much time to deduct based on these affidavits. But Ms. Starrett, if you presented those five to the jury, and then the other seven that had a different result, doesn't that create a question for a fact finder whether you can make the ultimate calculations or not? Doesn't it create a question at least about the process? Yes, Your Honor. It certainly could have created a genuine issue of material fact, if the affidavits had been specific and detailed. In fact, this court in the Viet B. Lee case said, we're not going to allow conclusory and vague affidavits to create a genuine issue for a jury trial. You have to be able to show that the jury could rule for the defendant. And in this case, if that's the view, why did he issue the ruling of law on custom construing the Portal to Portal Act? If the employer hadn't even put in enough evidence on this score, you wouldn't have had to reach that legal ruling. It just doesn't make any sense. Your Honor, there was discussion about an agreement between the parties, and there was no evidence of that agreement. There was discussion about customs and practices. There was very little, if any, evidence of customs and practices. I just said there was of whether or not people traveled to fuel up their machinery, and whether they stopped on the way to the forest. And again, there's just no evidence in the record by which you can calculate that. Let's just say, on most days, I drove two hours. But on some days, I went to the fuel station, and I gassed up on the way to work. So if Timberline had really been serious about this, they could have presented evidence. And that is what the judge said to them. Because of the Mount Clemens standard, liability has already been established. The Secretary has already presented reasonable calculations. It is Timberline's burden now to negate these reasonable calculations by showing some other evidence. Again, they could have shown evidence, affidavits that were representative. Just out of curiosity, under Mount Clemens, you think these five affidavits don't do the trick? That's correct, Your Honor. The judge said that they were vague and inadequate. Even as to the five employees that are mentioned? If they had not said on most days, and when they could fit it in, in other words, if they had been more specific, if they said, for example, I took a 30-minute lunch period every day, then you could say that's five days a week. That's, you know, every day of the period. Wouldn't you be inclined to say that lacks credibility, that every day, each thing is exactly the same? Your side is always the specialist in saying we have to have estimates. It seems very strange to say they're giving an estimate. They're, of course, not saying or expected to say 30 minutes, three seconds each day. Absolutely right, Your Honor. We go with the best evidence that we have. And here we have payroll and we also have some statements, some witness statements. You know, we have statements to the investigator. There are other pieces of evidence in this case that corroborate the statement that most of the employees did not have an opportunity to take a lunch break. And when they took the lunch break, they had to take it while they were driving. So why are we ignoring these affidavits? They're under oath. They're actually against the interest of the declarant. I mean, why are we, the affidavit, why are we ignoring them? Well, Your Honor, what the judge said is that they are inadequate, conclusory and insufficient to merit a trial. So essentially he said, if this is all you have, which apparently is all they were able to present, you know, after four years, this is not enough to go to a jury. I can't go to a jury with this evidence because the jury could not use these affidavits to essentially subtract the proper amount of time. As I said, if we could assume that these affidavits were representative, if they said, just like all the truck drivers, you know, none of us had an opportunity to take lunch or all the truck drivers did have an opportunity to take lunch. You know, you could have representative testimony where you have an affidavit that is sufficiently detailed to cover. Maybe you can't extrapolate to all 50, but we certainly have evidence that some of them did. And the whole nature of this is that it's an approximation anyway. It seems strange that you would say as a matter of law that if it's not exact, then you have to pay a hundred percent. No, Your Honor, I don't think it has to be exact. It has to be specific. It has to be detailed. You know, we have many affidavits and many, many FLSA cases where you can say, okay, I am going to take this as an estimated average, you know, that most of the employees, you know, took this amount of lunch on most of the days. And so then the investigator would essentially take that issue. And we certainly have calculations where we've been able to do that. We've been able to say everyone, you know, worked 60 weeks. That was the average hour. I'm sorry, 60 hours a week. However, if there's evidence that everyone worked 51 hours on an average week, then we will use the 51. So counsel, can I say something? I'm not sure I understand about your position. If you think the five affidavits are not sufficiently specific, they have some hedging on meal times, maybe a little hedging on commute times. Why aren't you the one that wanted discovery? That would have clarified the whole thing. But Your Honor, we took discovery. We engaged in discovery. We deposed Mr. Payne. No, no, no. These five affidavits, you deposed all of them. Of the five. Yeah, why wouldn't you want discovery of them? I mean, if you didn't see, you know, I asked the Rule 56 question of, you know, your friend on the other side, you have the same problem. If you thought the affidavits, you needed more information before you responded, dealt with summary judgment, isn't it incumbent on you to say, give us a little more time either to depose or to file our own affidavit? Your Honor, we honestly don't believe that discovery would yield any additional better evidence. I mean, that is really the fundamental problem in this case. The judge has already ruled on liability. This court has already affirmed on liability. So the remand was for the limited purpose of establishing whether any travel time or bonafide mealtime could be identified and subtracted. You know, so we already have, again, fairly solid evidence that the average hours worked were 60 hours a week. But I mean, you're talking around the question. The question is, they have five affidavits that said we had a healthy amount of commute and mealtime. It's on you to either say those are lies, we depose them to realize they're lies, or they misunderstood the question, or you accept their truth. This is how summary judgment works. You're saying somehow, and the district court somehow seemed to think, oh, we need more There's never specificity about every day, every mealtime, every commute. So we start with specificity because we start with the payroll records. That's typically the practice of the Secretary of Labor, is we look at the contemporaneous records to determine what the evidence is in the case. What happened here is because we already have established that overtime was worked, Timberline is the one that is now contending that these payroll records that it was required to maintain as the employer, he is maintaining that his own records, Timberline's own records, are inaccurate. So the burden under Mount Clemens is for him to negate the Secretary's reasonable estimates by showing something, again, an affidavit that was detailed enough or some report that calculated subtracting of, let's just again say, two hours of commute for Mr. Payne, Gary Payne, who is Mr. Payne's brother, but someone else might have lived closer to the site, and so that person might have only commuted a half an hour. It is Mr. Timberline's burden. It's the employer's burden. Let's just put it this way. Yes. If they had 50 affidavits. If they had 50 affidavits? In other words, they were the same level of specificity or lack of it. You consider that a negative. I consider it potentially to prove more honesty, to be not they took a meal every day. I think what I understand your position to be in the district court judge's position to be is these affidavits are not specific enough. Even if you had 50 of them, you wouldn't be able to deduct any of the damages for commute and mealtime. Is that your position? I think you would have to estimate an average, and when they say most days, if that's five days a week, then you can add a certain amount of hours or subtract a certain amount of hours. If that's one day a week, you can add or subtract. Taking these at face value, I would have to say three days a week. I'll assume that most days means three days a week, but there could be an argument that they're talking about four days a week. You have to translate the language in the affidavit into back pay numbers, hours per week, and that's what we would try to do is to subtract the correct amount of hours. The way American litigation works is they put their 50 affidavits out there, and you decide to depose them or not, or maybe you work out an agreement with the employer when they say most days, are we going to assume three, and you guys both agree on three, and then you get the expert to do the calculation. That is how most of our cases go, yes. That is not what happened here, and part of the problem is that we don't have 50 affidavits. We have a problem of whether these five are representative, in addition to the problem of whether these five are detailed and specific enough to be able to subtract the amount of hours. I agree with you, 50 affidavits would have been an easier case, much easier. The employer says that the seven affidavits that go the other way were by short-term employees. Do they count for much, or what should we do with that, because they presumably help you? Your Honor, there's no evidence in the record about that, and I just really can't respond to that one way or the other. I'm not aware of any evidence whatsoever about that in the record, the same as I'm not aware of any expert report, so I cannot really comment on that. If the district judge had reviewed those items, or if Timberline had brought those items to the district judge's attention, I'm sure that the district judge would have considered those issues. What's your position on whether the defendant requested discovery? Well, it is true that after the remand, they asked the judge to reopen discovery, and the judge said, essentially, you've already had plenty of discovery. They had already had 18 months of discovery. They've had rounds and rounds and rounds of briefing on this. There had been detailed affidavits and discussions about how Mr. Rona, the investigator, how he calculated the amounts of time, how he calculated the average weekly hours. There had been challenges by Timberline, saying that certain hours were inflated, and we respond to that by reducing the amounts of estimated damages. I mean, we spent a lot of time working and correcting these computations to make them as accurate as we possibly could, given the evidence that we had. Had there ever been any discovery directed specifically at mealtimes and commute times? Again, I can't swear that, because I didn't litigate this case below, but I believe that there was, and I do know that there was a lot of discussion about payment for fuel costs and payment for cell phones, and there was a lot of discussion about whether the employees were compensated in different ways. There were load rates and day rates and cord rates, and it was a fairly complex payroll system. I know that there were questions and discussions about that in the Wage and Hour investigators' interviews of the employees, and his testimony, as I recall, his affidavits stated that, well, we have the seven affidavits essentially, stating that the employees did not include that time. Okay, so I have a quick question, and I realize you're out of time, but you said that when the case was remanded, and the judge said, you've already had, you know, plenty of time to get discovery. Prior to the remand, there was one theory that these five are representative of the group. You know, litigants have an obligation not to abuse discovery, but to be judicious in it, and so there was a theory relying on these representative samples. So, the remand presented a significant change in the posture of the case, so why didn't that represent a change significant enough to warrant more discovery, and if that's the case, if more discovery is warranted, you know, doesn't that argue against your position and the judge's decision that you've already had enough time? Again, Your Honor, all I can respond is when this question was asked below, the Secretary's position was that defendants have already, I'm sorry, yeah, defendants have already had the opportunity to essentially explore and discover and, you know, review and find all the evidence that's possibly out there, and that's a pretty stingy position, is what I would say. I just don't think it's that hard. I get it has to be an estimate. I get it that it has to be representative, but this does not seem very complicated to me, and I'm just really blown away that the two of you couldn't figure this out. That's my too honest assessment. Again, I think, Your Honor, if this had been a clean slate, I would completely agree with you. I think because of the Mount Clemens situation that we're in, where liability had already been established, damages had already been calculated, the judge was reluctant. We understand Mount Clemens, I promise you. These are five affidavits purporting to be representative, and you either decide they're representative or you decide we need more affidavits. It's just not that hard. That is not a Mount Clemens problem. So thank you very much. Mr. Thurr, let's hear your rebuttal. Thank you, Your Honor. Just to clarify a couple of issues, one is with respect, you had raised the issue of the short-term nature of the affidavits from the counter affidavits from the secretary. The time length of each of them is stated in their very affidavit, which was filed of record. Charles Hamilton was a driver from February to March of 2015. Jesse Jacobs was a driver from- So this is really helpful. So that proves they're there. The evidence is there. But again, I'm back to the central point. You have to make estimates here. If the short-term drivers were doing this, it's possible there are lots of short-term drivers. It's possible you cherry-picked people that live very far away from the work site. It would not be the first time that that happened in talking about representative evidence. Usually what happens here is you guys either agree that the five and seven together generally are representative, or you decide we're going to get affidavits from all 50. But my gosh, this is remarkable how much you're litigating this. It's consequential. I'm not saying it's not. It is. You're eating up a lot more time with your briefing and appellate arguments than would cost you and your client by just saying, here's the rough estimates. It's the best we can do. They can decide they want more evidence or not. I realize the district court wouldn't let you do discovery. I get that point. I suspect the district court was a little frustrated with the way this case had proceeded. I'm starting to get a sense for it, to be honest with you. Judge, we cannot make the secretary agree with what our perspective is, but we know that their calculations are not correct. As you indicate, it's a significant size judgment. This is one of those judgments where if you look in the preambles to the Fair Labor Standards Act, where they talk about ruinous liability for an employer, this is it in this amount. For this, what we have done is we have provided five affidavits and other documentary evidence suggesting that they're representative. The secretary made no effort whatsoever to account for those numbers. They are still in the judgment that was entered after remand in this case. Judge, we respectfully request that the judgment be remanded again for determination of the actual time to work and meal time for each employee. Thank you. Okay. Thank you. The case will be submitted and the clerk may adjourn court. This honorable court is now adjourned.